WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| NAI Horizon,<br><br>      Appellant,<br><br>v.<br><br>Amadeus Therapy Incorporated,<br><br>      Appellee. | No. CV-23-00371-PHX-JAT<br><br>**ORDER** |

Pending before the Court is an appeal, (Doc. 1), from the Bankruptcy Court's February 14, 2023, Order, (Doc. 12-1, Exh. 3), sustaining Amadeus Therapy's ("Debtor") Objection to Horizon Real Estate Group's ("NAI") Proof of Claim and disallowing NAI's Proof of Claim 4-1 in its entirety. The Court now rules on the appeal.

**I.     BACKGROUND**

NAI, the Appellant, did not provide the Court with a trial transcript and cites documents it did not include in its appeal. Debtor has provided the Bankruptcy Court's Order which includes stipulated facts that were adopted by both parties in their Joint Pre-Trial Statement. (Doc. 12-1, Exh. 3). The Court will use those facts. The following is a direct quote of the stipulated facts found by the Bankruptcy Court in its February 14, 2023, Order:

> On February 25, 2019, Amadeus Therapy, Inc. ("Debtor") signed a Promissory Note Secured by Deed of Trust ("Promissory Note") for a $500,000 loan from Kenwood Mortgage Investments, Inc. for a piece of real property located at 200 N. Dysart Road, Avondale, Arizona (APN 500-20-

019D) ("Dysart Property").

The Promissory Note was signed by Bridget O'Brien, President, and CEO of Debtor ("Ms. O'Brien").

In April 2020, Ms. O'Brien was diagnosed with metastatic breast cancer stage three with the prognosis of likely death.[1]

Near the end of 2020, Debtor fell into default on the Promissory Note.

In February 2021, [Debtor] entered into an Exclusive Authorization for Sale of Real Property agreement ("Listing Agreement") with NAI for the sale of the Dysart Property.

Pursuant to the terms of the Listing Agreement, NAI would be the sole and exclusive agent to represent [Debtor] and to find buyers for the Dysart Property during the listing period.

According to the Listing Agreement, Debtor would pay NAI a 5% commission if, among other things, "the Property or any interest therein is voluntarily or involuntarily sold, conveyed, exchanged, assigned, contributed, or transferred."

On May 19, 2020, Debtor signed a Special Warranty Deed which, according to its terms, conveyed the Dysart Property to The Vickie L. Simpson Living Trust ("Trust").

Debtor claims that Ms. O'Brien intended the transfer to be conditioned exclusively upon her death.

Unexpectedly, Ms. O'Brien survived.

The principle [sic] of the Trust, Vickie Simpson ("Ms. Simpson") recorded the Special Warranty Deed in May 2021.

Ms. O'Brien claims that the recording happened without her permission.

On October 27, 2021, the Trust quit-claimed the Dysart Property back to the

---

[1] There is some confusion about whether or not NAI stipulated to this fact in the Joint Pre-Trial Statement. According to the Bankruptcy Court's Order, NAI listed this fact in the uncontested facts section of the statement, but it also stated in its contested facts section, "Evidence has come to light that Ms. O'Brien either exaggerated her illness, or never was terminally ill in the first place." (Doc. 12-1 at 2, n.4).

Debtor.

The Dysart Property sold for $1,521,000 after the Debtor filed for bankruptcy relief.

(Doc. 12-1 at 11–12). NAI challenges some of these factual findings in this appeal, and those findings will be addressed as appropriate in the Court's analysis.

On December 7, 2021, NAI filed a Proof of Claim to which Debtor objected. (*Id.* at 10). Prior to trial, the Bankruptcy Court ruled on cross motions for summary judgment, and largely granted summary judgment for Debtor and denied summary judgment to NAI. (*Id.*) "The only issue that remain[ed] for trial [was] the intent of the Debtor, through Ms. O'Brien, to transfer the Property to Ms. Simpson." (*Id.*) A bench trial was held on December 14, 2022, and the parties submitted closing briefs on December 28, 2022, after which the Bankruptcy Court took the matter under advisement. (*Id.*) The Bankruptcy Court subsequently found that Debtor "intended the Deed to be conditional with title to the Dysart Property to transfer only upon Ms. O'Brien's death" and thus delivery was ineffective. (*Id.* at 20). "Accordingly, the Debtor did not breach the Listing Agreement by not being the owner of the Dysart Property at the onset of the Listing Agreement or by transferring the Property during the term of the Listing Agreement." (*Id.* at 21).

## II.   LEGAL STANDARD

A bankruptcy court's findings of fact are reviewed for clear error, while its conclusions of law are subject to de novo review. *In re JTS Corp.*, 617 F.3d 1102, 1109 (9th Cir. 2010). The bankruptcy court commits clear error where "the reviewing court is left with the 'definite and firm conviction that a mistake has been made.'" *In re Adamson Apparel, Inc.*, 785 F.3d 1285, 1291 (9th Cir. 2015) (citation omitted) (concluding that bankruptcy court did not clearly err in making a finding of fact because that finding was supported by evidence in the record). "Mixed questions of law and fact are reviewed de novo." *In re Chang*, 163 F.3d 1138, 1140 (9th Cir. 1998).

The Court reviews the bankruptcy court's imposition or denial of discovery sanctions under Rule 37 for abuse of discretion. *See In re Hansen*, 368 B.R. 868, 875

(B.A.P. 9th Cir. 2007). "A bankruptcy court necessarily abuses its discretion if it bases its decision on an erroneous view of the law or clearly erroneous factual findings." *Id.* To find abuse of discretion, the Court "must have a definite and firm conviction that the bankruptcy court committed a clear error of judgment in the conclusion it reached." *Id.*

**III.   DISCUSSION**

As a preliminary matter, NAI lists four separate issues for the Court's consideration on appeal. The first two matters are as follows:

> 1. Did the Bankruptcy Court err in disallowing NAI Horizon's claim for breach of contract based upon completed transfer of the Dysart Property in contravention of the Listing Agreement?
>
> 2. Did the Bankruptcy Court err in disallowing NAI Horizon's claim for payment of commission based upon a completed sale during the extended listing period?

(Doc. 11 at 6). However, NAI does not make any further arguments as to why the Court should rule in its favor on these purported issues beyond the listing of the issues at the beginning of its appeal. Consequently, the Court finds that these issues have not been preserved.[2] *Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994) ("We review only issues which are argued specifically and distinctly in a party's opening brief. We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim . . . ." (citation omitted)). NAI's remaining issues presented are as follows:

> 3. Did the Bankruptcy Court err in ruling that Debtor did not have the burden of proof on setting aside the Deed transfer by recordation, and in misapplying the law based on that error, including the necessary level of proof to overcome that burden?
>
> 4. Did the Bankruptcy Court err in ruling that Debtor was excused from providing substantive, third party evidence of illness as directed in the Rule 2004 Orders?
>     a. Did the Bankruptcy Court err in allowing Debtor's self-serving and uncorroborated testimony to override the need to supply substantive evidence as required by the Rule 2004 Orders?

---

[2] Regardless of preservation, the Court also finds that these arguments do not have merit in light of the Court's subsequent analysis.

- 4 -

      b. Did the Bankruptcy Court err in failing to consider the recorded documents when assessing inconsistencies in Debtor's testimony?
      c. Did the Bankruptcy Court err in not imposing an appropriate sanction for Debtor's failure to respond to discovery as required by the Rule 2004 Orders?

(Doc. 11 at 6–7). The Court will address the issues raised in NAI's appeal in turn, albeit not in the order presented by NAI.

    **A.**    **Substantive Evidence**

    The Court will first address NAI's contention that the Bankruptcy Court erred when it found that Debtor sustained her burden in showing ineffective delivery of the Dysart Property. (*See* Doc. 11 at 10). NAI seems to argue, without any case law to support its contention, that the Bankruptcy Court could not have found that Ms. O'Brien suffered from stage three cancer as a matter of law. (*Id.* at 10–11). NAI asserts that Ms. O'Brien's testimony and the screenshot from her licensed naturopath, Dr. Wooten, was insufficient evidence to sustain Debtor's burden of proving Ms. O'Brien's illness which served as the basis for the alleged conditional delivery of the Dysart Property. (*Id.*) NAI has not identified—and the Court cannot find—authority that provides a particular threshold of corroborating evidence needed to make a factual finding like Ms. O'Brien's cancer diagnosis. Thus, there was no misapplication of the law by the Bankruptcy Court.

    The Court also construes NAI's argument as a challenge to the factual finding of the Bankruptcy Court that Ms. O'Brien had cancer.[3] NAI correctly states that "[a]ctual intent may be shown by direct proof or by circumstantial evidence from which actual intent may be reasonably inferred." (*Id.* at 10 (quoting *Gerow v. Covill*, 960 P.2d 55, 63 (Ariz. Ct. App. 1998))). The Bankruptcy Court considered the letter from Dr. Wooten and Ms.

---

[3] Despite NAI not providing any excerpts of record outside the Bankruptcy Judge's order, the Court will nevertheless consider NAI's argument. The Court reminds NAI that dressing up factual conclusions as legal conclusions does not exempt NAI from the applicable rules of bankruptcy procedure. *See* Fed. R. Bankr. P. 8009(b)(5) ("If the appellant intends to argue on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant must include in the record a transcript of all relevant testimony and copies of all relevant exhibits.").

O'Brien's testimony as supporting evidence for the fact that Ms. O'Brien had cancer—the premise for conditional delivery of the Special Warranty Deed. (Doc. 12-1 at 7–9). The Bankruptcy Court then considered NAI's arguments that the Ms. O'Brien's testimony and the screenshot she provided of the note from Dr. Wooten were not credible. (*Id.* at 8–9).

First, the Court agrees with the Bankruptcy Court's interpretation of *Magallanes v. Bowen*, 881 F.2d 747, 752 (9th Cir. 1989), that a non-treating physician's opinion should be discounted only when contradicted by "all other evidence in the record." Dr. Wooten's letter was not contradicted by anything else in the record because NAI did not introduce alternative, contradicting evidence. (*Id.* at 8). Further, NAI introduced the statement by stipulation. (*Id.*) Thus, the Bankruptcy Court did not err in considering the letter as evidence of Ms. O'Brien's diagnosis.

Second, the Bankruptcy Court determined that despite the issues pointed out by NAI, Ms. O'Brien's explanations and testimony were credible. (*Id.* at 10). The Bankruptcy Court heard the testimony of two witnesses who testified negatively as to Ms. O'Brien's character for truthfulness but was unconvinced that Ms. O'Brien was untruthful because both witnesses were successfully impeached by Debtor's council. (*Id.* at 9). "When factual findings are based on determinations regarding the credibility of witnesses" the Court strongly defers to the findings of the Bankruptcy Court because, "as the trier of fact, [the Bankruptcy Court] had the opportunity to note 'variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.'" *In re Retz*, 606 F.3d 1189, 1196 (9th Cir. 2010) (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 575 (1985)). Here, the Bankruptcy Court weighed evidence presented by both parties and found Ms. O'Brien to be more credible. This Court is not "left with the definite and firm conviction that a mistake has been made." *In re Adamson Apparel, Inc.*, 785 F.3d at 1291. Overall, the Court's review of the Bankruptcy Court's order does not show a misapplication of law or clear error in its finding that Ms. O'Brien had cancer.

### B. Consideration of Recorded Documents

NAI next argues that the Bankruptcy Court erred when it found that Ms. O'Brien

intended the Deed to be conditional with title to the Dysart Property to transfer only upon Ms. O'Brien's death because it considered parol evidence beyond the Special Warranty Deed. (Doc. 11 at 11–16). NAI asserts that "Debtor unequivocally transferred the Dysart Property" and the "clear and unambiguous language of the Deed" controls the delivery of the deed. (*Id.*)

NAI claims *Schornick v. Schornick*, 220 P. 397, 401 (Ariz. 1923), holds that where a grantor does not put a condition of delivery in the body of the deed, a court relying on parol evidence to determine intent regarding delivery "would violate the well-established rule forbidding the use of parol evidence to vary the terms of a written contract." This concept would apply to this case if the facts of this case matched those of *Schornick*. However, the Arizona Supreme Court specifically says in *Schornick* "[i]f the language employed in the deed was doubtful, or if the act of delivery was equivocal, [parol evidence] might be of use in determining the grantor's intention." 220 P. at 401. In *Schornick*, the act of delivery was unequivocal because the grantor's wife testified that her husband gave her no condition when he handed her the deed, and her testimony was not contradicted. *Id.* But here, Ms. O'Brien herself testified that the passage of title was conditioned upon her death. Thus, the delivery was equivocal, and the Bankruptcy Court's consideration of parol evidence was appropriate.

This conclusion is bolstered by examination of cases subsequent to *Schornick*. In *Parker v. Gentry*, 154 P.2d 517, 519 (Ariz. 1944), the Arizona Supreme Court stated "[a] delivery is essential to the validity of a deed[;]" "[t]he question whether a deed is delivered may be proved by parol[;]" and finally, "it must affirmatively appear that the grantor's intention was that the deed should pass title at the time and that he should lose all control of it." In *Robinson v. Herring*, 253 P.2d 347, 350 (Ariz. 1953), the court states "[d]elivery is a question of fact which is to be determined from the circumstances surrounding the particular transaction." It is true, as NAI points out, the facts of *Robinson* do not match the facts here, but the focus of the inquiry remains on whether the grantor intends to deprive themselves of all control over the premises. *See id.* Like here, the *Robinson* court relied

on the testimony of the grantor to help determine his intent and find that there was no legal delivery. It is clear to the Court upon examination of the history of Arizona case law on this subject that the Bankruptcy Court did not err in considering parol evidence to determine Ms. O'Brien's intent on the issue of delivery.

### C. Rule 37 Sanction

NAI next argues that the Bankruptcy Court "neglected to consider Fed. R. Civ. P. 37(c)(1) in its entirety" and believes that the Bankruptcy Court erred in denying NAI's request for a sanction to disallow Ms. O'Brien's testimony as to her cancer diagnosis and treatment. (Doc. 11 at 16–17). NAI has again neglected to provide the Court with the trial transcript or other documentation—outside of its own citations to an unprovided record—detailing how this discovery issue played out. As before, the Court has reviewed the copy of the Bankruptcy Court's Order provided by Debtor and it appears that NAI also provided the Bankruptcy Court with "no information as to how [the] discovery issued played out." (Doc. 12-1 at 16).

The Bankruptcy Court found that Debtor was substantially justified in not providing documentation for Ms. O'Brien's cancer diagnosis. (*Id.*) Ms. O'Brien testified that she was unable to obtain her medical records on the expedited discovery schedule agreed to by both parties because the Mayo Clinic was "extremely backed up." (Doc. 12-1 at 7). The Bankruptcy Court also noted in a footnote that the parties did not conduct any discovery prior to a month before trial. (*Id.* at n.9). On this record, the Court does not find that the Bankruptcy Court based its decision on an erroneous view of the law or clearly erroneous factual findings. Ms. O'Brien's explanation combined with the apparent lack of due diligence by NAI serve as adequate reasoning to support the Bankruptcy Court's refusal to sanction Debtor. This Court does not have a "definite and confirm conviction that the bankruptcy court committed a clear error of judgment in the conclusion it reached." *In re Hansen*, 368 B.R. at 875. Thus, the Bankruptcy Court did not abuse its discretion in finding no basis for sanctions.

### D. Burden of Proof

The final issue the Court will address is NAI's argument that the Bankruptcy Court "erred in ruling that Debtor did not have the final burden of proving intent." (Doc. 11 at 8). In a somewhat confusing argument, NAI asserts that the Bankruptcy Court "placed the ultimate burden of proving intent on NAI, and not the Debtor." (Doc. 17 at 4).

The Court has reviewed the Bankruptcy Court's Order, and the Bankruptcy Court was "clearly convinced from the evidence that Ms. O'Brien, and accordingly the Debtor, intended the Deed to be conditional with title to the Dysart Property to transfer only upon Ms. O'Brien's death." (Doc. 12-1 at 19–20). The Bankruptcy Court based its conclusion on evidence provided by the Debtor, namely, Ms. O'Brien's testimony, emails from Ms. Simpson to multiple parties, the note from Dr. Wooten, and the delay in recordation by Ms. Simpson. (*Id.*) It also considered evidence presented by NAI, but found the circumstantial evidence presented did "not outweigh the credibility of Ms. O'Brien's testimony." (*Id.* at 10).

Put simply, proving that a party had intent to deliver a deed is a necessary element to proving nondelivery. *See Robinson*, 253 P.2d at 350 ("Delivery is a question of fact which is to be determined from the circumstances surrounding the particular transaction. The *intention* to pass immediate and irrevocable title to the property interest is the *essential fact for consideration*." (emphasis added)). As such, when the Bankruptcy Court put the burden of proving nondelivery on Debtor, it necessarily also put the burden of proving intent on Debtor. An argument otherwise is belied by the record. The Bankruptcy Court did not err in placing the burden of proof on Debtor.

### IV. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that the Bankruptcy Court's February 14, 2023, Order is **AFFIRMED**.

/ / /

/ / /

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly pursuant to Federal Rule of Bankruptcy Procedure 8024(a).

Dated this 26th day of February, 2024.

James A. Teilborg
Senior United States District Judge